

FILED
U. S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

SEP 1 0 2020

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

| | |
|---|---|
| ROBERT AUSTIN, individually and on behalf of others similarly situated. <br><br>               Plaintiff, <br> v. <br><br> HOME MARKETING ASSOCIATES, INC. d/b/a PERMASTEEL and JOHN DOE CORPORATION <br><br>               Defendants. | Case No.:  4:20-cv-1083-DPM <br><br> **CLASS ACTION COMPLAINT FOR DAMAGES, STATUTORY DAMAGES, AND REQUEST FOR INJUNCTIVE RELIEF** <br><br> **JURY TRIAL DEMANDED** |

**Preliminary Statement**

1.      As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (July 6, 2020).

2.      Plaintiff Robert Austin brings this action under the TCPA alleging that Defendant Home Marketing Associates, Inc. d/b/a PermaSteel ("PermaSteel"), commissioned automated telemarketing calls for purposes of promoting their goods and services without his prior express written consent. The calls were physically dialed by the John Doe Corporation, a telemarketing vendor hired by PermaSteel.

This case assigned to District Judge Marshall
and to Magistrate Judge Volpe

3. Because these calls were transmitted using technology capable of generating thousands of similar calls per day, he sues on behalf of a proposed nationwide class of other persons who received similar calls.

4. A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

### Parties

5. Plaintiff, Robert Austin, resides in this District.

6. Defendant Home Marketing Associates Inc. is a domestic corporation that does business in this District and has a registered agent of Blake E. Atkinson, 10203 Sibley Hole Rd., Mabelvale, AR 72103.

7. Defendant John Doe Corporation was hired by PermaSteel and made telemarketing calls to putative class members, including the Plaintiff.

### Jurisdiction & Venue

8. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

9. The Court has personal jurisdiction over the Defendant because they engaged in telemarketing conduct into this District.

10. Venue is proper under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls were made into this District.

## TCPA Background

11.    The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service."  *See* 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

12.    According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

13.    The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used."  *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

14.    While "prior express consent" is required for all automated and prerecorded calls, in 2013, the FCC required "prior express written consent" for all such telemarketing calls to wireless numbers and residential lines.  Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without

requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*

27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

15.     "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12).

### Factual Allegations

16.     PermaSteel offers home improvement services, with a focus on roofs and siding.

17.     To sell these services, PermaSteel relies on telemarketing.

18.     However, PermaSteel hired third parties, such as John Doe Corporation to physically dial the calls.

19.     While such automated technology may save time and money for PermaSteel's telemarketing efforts, it violates the privacy rights of the Plaintiff and putative class.

-   <u>Calls to The Plaintiff Austin</u>

20.     Plaintiff Austin is a "person" as defined by 47 U.S.C. § 153(39).

21.     Mr. Austin's telephone number, (501) 960-XXXX, is registered to a cellular telephone service.

22.     At the direction of PermaSteel, John Doe Corporation called Mr. Austin on his cellular telephone with an automated call on October 17, 2019.

23.     The call was made with an ATDS, as that term is defined by the TCPA.

24.     The call was made with an ATDS as there was a distinctive click and pause with a silence before a human being was connected on the call.

25.     The purpose of the calls was to sell PermaSteel's services to Mr. Austin in exchange for a fee.

26.     Confirming that PermaSteel made the call and was offering their services, Mr. Austin sent PermaSteel a letter.

27.     PermaSteel confirmed that John Doe made the call, but did not identify them.

28.     In its response, PermaSteel confirmed that an automatic dialer was used.

29.     The equipment used to call Plaintiff and others not only had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, but was programmed to sequentially or randomly access stored telephone numbers to automatically call such numbers for the calls that are the subject of this case.

30.     The equipment generated, and then stored, a sequence of telephone numbers for calling, and then automatically called those numbers.

31.     The calls were part of a campaign that made numerous phone calls in a short period of time without human intervention.

32.     The call was made from (501) 588-0069.

33.     Other individuals have complained about receiving calls from that number:

> Selling metal roofing, siding, and windows.   I said bad words and hung up,  and blocked them.   Not sure if they are a local company originally or part of a franchise.   Also you can email them on their website in the comments section and submit negative reviews.
>
> *Caller: Perma Steel*
>
> *Call type: Telemarketer*

*See* https://800notes.com/Phone.aspx/1-501-588-0069 (Last Visited September 1, 2020).

34.     The call invaded Plaintiff's privacy and intruded upon his right to seclusion. The calls frustrated and upset Plaintiff by interrupting their daily life and wasting their time.

35.     Plaintiff did not consent to receive Defendants' calls prior to the receipt of the unsolicited conduct.

**PermaSteel's Liability for John Doe's Actions**

36. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

37. In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

38. In fact, the Federal Communication Commission has instructed that sellers such as PermaSteel may not avoid liability by outsourcing telemarketing to third parties:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

39. John Doe Corporation was hired by PermaSteel to generate new customers.

40. John Doe Corporation was hired by PermaSteel to generate new customers through telemarketing.

41. PermaSteel accepted the benefits of John Doe Corporation's illegal telemarketing by accepting customers from John Doe Corporation despite the fact that those leads were generated through illegal telemarketing.

42. PermaSteel had absolute control over whether, and under what circumstances, it would accept a customer.

43. PermaSteel determined the parameters and qualifications for customers that John Doe made telemarketing calls to.

44. First, PermaSteel restricted the geographic regions that John Doe called.

45. Second, PermaSteel failed to restrict John Doe Corporation from generating customers using an autodialer.

46. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

### Class Action Allegations

47. As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a Class of all other persons or entities similarly situated throughout the United States.

48. The Class of persons Plaintiff proposes to represent is tentatively defined as:

> Robocall Class: All persons within the United States to whom: (a) Defendant and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number; (c) using the same, or similar dialing system used to contact the Plaintiff, or

an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

49. Excluded from the Class are counsel, the Defendant, and any entities in which the Defendant have a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

50. The Class as defined above is identifiable through phone records and phone number databases.

51. The potential Class members number at least in the hundreds. Individual joinder of these persons is impracticable.

52. The Plaintiff Austin is a member of the Robocall Class.

53. There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

    a. Whether Defendant violated the TCPA by using automated calls to contact putative class members cellular telephones;

    b. Whether Defendant placed calls without obtaining the recipients' prior express consent for the call;

    c. Whether the Plaintiff and the class members are entitled to statutory damages because of Defendant's actions.

54. The Plaintiff's claims are typical of the claims of class members.

55. The Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and counsel skilled and experienced in class actions, including TCPA class actions, represents them.

56. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or their agents.

57. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

58. The Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for the entire Class' membership described above.

## LEGAL CLAIMS

### First Claim for Relief:
### Violation of the TCPA's Automated Call provisions

59. The Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

60. Defendants' calls were made without the prior express consent, or the prior express written consent, of the called parties. 47 C.F.R. § 64.1200(a)(2); 47 C.F.R. § 64.1200(f)(8).

61. The Defendants violated the TCPA by (a) using an automatic telephone dialing system to make calls to cellular telephone numbers without the required consent, or (b) by the fact that others made those calls on its behalf. *See* 47 U.S.C. § 227(b).

62. The Defendant's violations were willful and/or knowing.

63. The TCPA also authorizes injunctive relief, and the Plaintiff seek injunctive relief prohibiting Defendant from calling telephone numbers using an automatic telephone dialing system or a pre-recorded voice, absent an emergency circumstance.

## Relief Sought

WHEREFORE, for themselves and all class members, Plaintiff requests the following relief:

A.      Injunctive relief prohibiting Defendant from calling telephone numbers using an automatic telephone dialing system or a pre-recorded voice, absent an emergency circumstance;

B.      Because of Defendant's violations of the TCPA, Plaintiff seek for themselves and the other putative Class members $500 in statutory damages per violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

C.      An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding that Plaintiff are proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

D.      Such other relief as the Court deems just and proper.

**Plaintiff request a jury trial as to all claims of the complaint so triable.**


Dated: September 10, 2020

Jason Ryburn, AR # 2012148
Ryburn Law Firm
650 S. Shackleford Rd., Ste. 231
Little Rock, AR 72211
[o] (501) 228-8100
[f] (501) 228-7300
jason@ryburnlawfirm.com

Anthony I. Paronich (*pro hac vice*)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
[o] (617) 485-0018
[f] (508) 318-8100
anthony@paronichlaw.com